IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
      PELVIC REPAIR SYSTEM
      PRODUCTS LIABILITY LITIGATION

MDL No. 2326

--------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Barbara G. Vincent & Barry C. Vincent v. Boston Scientific Corp.*    No. 2:13-cv-8669

MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment Based on Statute of Limitations)

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 26]. For the reasons set forth below, the Motion is **DENIED**.

### I.    Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to administer pretrial discovery on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select

50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The plaintiffs' case was selected as a Wave 2 case by BSC.

On October 16, 2009, Ms. Vincent was surgically implanted with the Uphold Vaginal Support System (the "Uphold"), a product manufactured by BSC to treat POP. (BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 26], at 3; Pl. Fact Sheet [Docket 26-1], at 5). She received her surgery at a hospital in Jonesboro, Arkansas. (Mem. in Supp. [Docket 26], at 3). Ms. Vincent claims that as a result of implantation of the Uphold, she has experienced multiple complications, including constant pelvic, rectal, and vaginal pain; swelling of the labia, rectal, and perineal areas; spasms; nerve pain and nerve damage; and an inability to have sexual intercourse with her husband. (*Id.*). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; and punitive damages. (*Id.* at 2 (citing to the plaintiff's Short Form Complaint)). In the instant motion, BSC argues that each of Ms. Vincent's claims is barred by Arkansas's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Vincent's case. BSC also argues that if Ms. Vincent's claims are barred as untimely, Mr. Vincent's claim for loss of consortium is also time barred and should be dismissed.

**II. Legal Standards**

**A. Summary Judgment**

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

**B. Choice of Law**

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL

cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as Ms. Vincent did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Vincent received the Uphold implantation surgery in Arkansas. (Pl. Fact Sheet [Docket 26-1], at 5). Thus, the choice-of-law principles of Arkansas guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Arkansas

law to the plaintiffs' claims. Arkansas courts consider the *lex loci delicti* doctrine and Dr. Robert A. Leflar's[1] five choice-influencing factors in conjunction when analyzing choice of law problems. *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 847 (Ark. 2006); *Schubert v. Target Stores, Inc.*, 201 S.W.3d 917, 922–23 (Ark. 2005). "Under the doctrine of *lex loci delicti*, the law of the place where the wrong took place is the proper choice of law." *Ganey*, 234 S.W.3d at 846. The five choice-influencing factors, promulgated by Dr. Leflar, include (1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. *Id.* The Leflar factors, however, are used only to soften "a rigid formulaic application" of the *lex loci delicti* doctrine. *See Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 546 (Ark. 2002). In the case at bar, those factors are inapposite. The implantation surgery that allegedly resulted in Ms. Vincent's injuries took place in Arkansas, where Ms. Vincent is a resident. (Pl. Fact Sheet [Docket 26-1], at 2, 6). Moreover, both parties agree that Arkansas is the proper choice of law. Thus, I apply Arkansas's substantive law—including Arkansas's statute of limitations—to this case.

### III. Discussion

Arkansas Code Annotated § 16-116-103 (2014) provides that "[a]ll product liability actions shall be commenced within three (3) years after the date on which the death, injury, or damage complained of occurs."[2] In *Martin v. Arthur*, the Supreme Court of Arkansas adopted the discovery rule for medical product liability claims, holding that the statute of limitations for such

---

[1] Dr. Leflar was a Distinguished Professor at the University of Arkansas, a noted scholar, and a recognized authority on conflicts law. *See Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453, 456 n.2 (Ark. 1977).

[2] All of the plaintiffs' claims are governed by the limitations period of the Arkansas Products Liability Act. *See IC Corp. v. Hoover Treated Wood Prods., Inc.*, 385 S.W.3d 880, 885 (Ark. Ct. App. 2011) (explaining that the Act defines "product liability actions" as "including *all* actions brought for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging, or labeling of any product") (emphasis added).

claims "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." 3 S.W.3d 684, 690 (Ark. 1999). In other words, a cause of action will accrue "when the plaintiff first becomes aware of his or her condition, including both the fact of the injury and the probable causal connection between the injury and the product's use, or when the plaintiff by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *IC Corp. v. Hoover Treated Wood Prods., Inc.*, 385 S.W.3d 880, 883 (Ark. Ct. App. 2011).

BSC argues that Ms. Vincent was aware of the harm allegedly caused by the mesh product, at the latest, on November 1, 2009. BSC points to Ms. Vincent's Plaintiff Fact Sheet, where she states that she has "lived with constant pelvic, rectal and vaginal pain, swelling of labia, rectal and perineal areas, spasms, nerve pain and nerve damage, [and] inability to have sexual intercourse with [her] husband since the surgery of 10/16/2009 . . . ." (Pl. Fact Sheet [Docket 26-1], at 6). Elsewhere on the Plaintiff Fact Sheet, Ms. Vincent admits that she first attributed her bodily injuries to the Uphold in November 2009. (*Id.* at 7). From these facts, BSC contends that Ms. Vincent was aware that the Uphold caused her injuries by November 1, 2009, and as such, her complaint, filed April 23, 2013, runs afoul of the statute of limitations. (Mem. in Supp. [Docket 26], at 7–8). Lastly, BSC argues that because Ms. Vincent's claims are time barred, Mr. Vincent's derivative consortium claim also fails. (*Id.* at 10).

The facts, when viewed in the light most favorable to the nonmovant, are not as simple as BSC frames them to be. At best, Ms. Vincent's comments indicate that, within days of her surgery, she believed that there was a problem with her implant surgery. Although she reported on her Plaintiff Fact Sheet that she attributed her bodily injuries to the mesh in November 2009,

6

(*see* Pl. Fact Sheet [Docket 26-1], at 7), she clarified during her deposition that she meant that she knew the mesh *surgery* caused her problems, not necessarily the mesh itself. (*See* Barbara Vincent Dep. [Docket 26-2], at 112:13–18 (Ms. Vincent was asked if she knew in November 2009 "that the mesh *surgery* was causing [her] problems, something was wrong and the problems it was causing are the same problems of your complaint in the lawsuit today?" Ms. Vincent responded, "Yes.") (emphasis added)). Indeed, Ms. Vincent repeatedly attributed her injuries to the surgery itself, rather than the product, during her deposition. (*See, e.g.*, Barbara Vincent Dep. [Docket 51-1], at 109:15–112:18). Moreover, it was not until June 26, 2012, that a medical professional told her that the surgical mesh system was responsible for her injuries. (*See* Barbara Vincent Dep. [Docket 51-1], at 278:4–12 (quoting Dr. Stripling's June 26, 2012 record, "I believe it is related to a surgical mesh system that was placed back in October of 2009," and explaining that at this time Ms. Vincent became confident that the problems she was having resulted from the mesh)). Therefore, a genuine dispute of material fact exists as to whether, in November 2009, Ms. Vincent "should have discovered a causal connection between the [Uphold] and the injuries suffered." *See Martin*, 3 S.W.3d at 690. This factual question should be left to the jury. *See State v. Diamond Lakes Oil Co.*, 66 S.W.3d 613, 616 (Ark. 2002) ("[I]f there is any reasonable doubt as to the application of the statute of limitations, [the Arkansas Supreme Court] will resolve the question in favor of the complaint standing and against the challenge."). On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion [Docket 26] with respect to the Vincents' claims.

7

**IV.     Conclusion**

As explained above, the defendant's Motion [Docket 26] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                              ENTER:  March 25, 2015

                              JOSEPH R. GOODWIN
                              UNITED STATES DISTRICT JUDGE